**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0090n.06

**No. 10-2235**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| JOSEPH OZORMOOR, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellant, | ) | **Jan 25, 2012** |
| | ) | LEONARD GREEN, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| T-MOBILE USA, INC., | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |

Before: BOGGS, ROGERS and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. When Joseph Ozormoor experienced frustration with his T-Mobile cell phone plan—dropped calls, poor reception, mysterious charges on his monthly bill—he sued the company for more than $600,000 in damages. Enforcing an alternative-dispute provision in the service agreement, the district court compelled arbitration of Ozormoor's claims, and the arbitrator denied them all. Ozormoor appeals. We affirm.

I.

Ozormoor signed a one-year agreement with T-Mobile for cell phone service in November 2003. After the agreement expired, Ozormoor paid for service from month to month until March 2005, when he added a second line and signed another one-year service agreement. The 2003 and

2005 service agreements required Ozormoor to submit any claims against T-Mobile to arbitration and required him to bring all claims within one year of accrual.

Ozormoor had several problems with his T-Mobile plan, from poor reception inside his house to surprise roaming charges to a failure to make good on a rebate. In December 2005, Ozormoor cancelled the service and switched to another provider. He refused to pay the $400 early-termination fee, and T-Mobile referred his account to a collections agency.

In March 2008, Ozormoor sued T-Mobile in Michigan state court, alleging (1) breach of contract, (2) violation of the Michigan Consumer Protection Act, (3) intentional infliction of emotional distress and (4) defamation and seeking more than $600,000 in damages. T-Mobile removed the case to federal court and moved to compel arbitration. Concluding that the arbitration provision in Ozormoor's service agreement covered his claims, the district court granted T-Mobile's motion, an order we affirmed. *Ozormoor v. T-Mobile USA, Inc.*, 354 F. App'x 972 (6th Cir. 2009).

In April 2010, the arbitrator denied Ozormoor's claims for breach of contract and violation of the Michigan Consumer Protection Act because he failed to bring them within one year of their accrual. The arbitrator also denied Ozormoor's two tort claims because he premised them on T-Mobile's alleged breach of contract. Ozormoor returned to district court and filed a motion to vacate the arbitrator's award, which the district court denied.

II.

Ozormoor contests the district court's conclusion that the 2005 service agreement, as opposed to the 2003 service agreement, controls his claims. But this objection makes no difference, as the relevant provisions in each agreement are materially the same. Both agreements require Ozormoor to submit all claims against T-Mobile to "final, binding arbitration with the American Arbitration Association," R. 24-3 at 2; R. 25-5 at 46, and both provide that, "unless prohibited by law," any "claim or dispute must be brought . . . within one year of the date" it accrues. R. 24-3 at 4; R. 25-5 at 53. Even if we assume that the 2003 service agreement covered this dispute, as Ozormoor asks, it makes no difference to the outcome of this appeal.

In challenging the arbitrator's decision to dismiss his claims for breach of contract and violation of the Michigan Consumer Protection Act as untimely, Ozormoor argues that the arbitrator "exceeded [his] powers" under the Federal Arbitration Act. 9 U.S.C. § 10(a)(4). Nothing in the 2003 service agreement provides a handhold for this argument. With some limitations not relevant here, the agreement gives the arbitrator authority to make "final" and "binding" decisions on Ozormoor's claims. R. 24-3 at 2.

Ozormoor responds that collateral estoppel stripped the arbitrator of authority to dismiss his claims as late. Because the district court held that his claims were arbitrable when it compelled arbitration, the argument goes, the arbitrator was collaterally estopped from denying the claims on any grounds short of the merits. Not unlike Ozormoor's house, this argument falls in a dead zone. The key defect is that it conflates two questions: whether the parties have agreed to arbitrate a claim and what arguments the parties may make in arbitration. *See Howsam v. Dean Witter Reynolds, Inc.*,

537 U.S. 79, 83–84 (2002). The "order enforcing the arbitration provision," as the district court correctly observed, "said nothing about the arguments T-Mobile could raise before the arbitrator and was in no way intended to indicate, nor did it indicate, that Ozormoor's claims should be heard on the merits." R. 28 at 10. Consistent with the norms in this area, the district court left "issues of procedural arbitrability," including "whether prerequisites such as *time limits* . . . have been met," to the arbitrator. *Howsam*, 537 U.S. at 85; *see also United Steelworkers of Am., AFL-CIO-CLC v. Saint Gobain Ceramics & Plastics, Inc.*, 505 F.3d 417, 424 (6th Cir. 2007) (en banc). Because the district court's order compelling arbitration said nothing about the claims' timeliness, the company was not estopped from raising timeliness in front of the arbitrator. *See United States v. Cinemark USA, Inc.*, 348 F.3d 569, 583 (6th Cir. 2003).

Ozormoor next argues that we should set aside the arbitrator's decision because it exhibits a "manifest disregard of the law." Br. at 30. Unlike the FAA provision allowing an arbitration award to be challenged on the ground that the arbitrator "exceeded [his] powers," the ability to challenge an arbitration award on the ground that it represents a "manifest disregard of the law" amounts to "a separate judicially created basis" for vacating an award. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995). There is some doubt whether this theory remains a cognizable one after *Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576, 590 (2008). *See Grain v. Trinity Health, Mercy Health Servs. Inc.*, 551 F.3d 374, 379 (6th Cir. 2008). But the Supreme Court has not expressly rejected the theory, *see Stolt-Nielsen S.A. v. AnimalFeeds*

*Int'l Corp.*, 559 U.S. ___, 130 S. Ct. 1758, 1768 n.3 (2010), and T-Mobile at any rate does not challenge its applicability here. Either way, it makes no difference to Ozormoor's request for relief.

Under the manifest-disregard-of-the-law standard, we may set aside the arbitrator's decision only if, after applying "clearly established legal precedent, . . . no judge or group of judges could conceivably come to the same determination." *Jaros*, 70 F.3d at 421. Ozormoor tries to meet this difficult standard in two ways. He first contends that the one-year limitations period contained in the agreement violates the Michigan Consumer Protection Act, which creates a six-year statute of limitations. Mich. Comp. Laws § 445.911(7). But Michigan law permits parties to agree to a shorter limitations period by contract, *see Rory v. Cont'l Ins. Co.*, 703 N.W.2d 23, 31 (Mich. 2005), and that is just what Ozormoor and T-Mobile did. True, the Act prohibits consumer agreements that "purport[] to waive a right, benefit, or immunity provided by law, unless the waiver is clearly stated and the consumer has specifically consented to it." Mich. Comp. Laws § 445.903(1)(t). That requirement is met here. In no uncertain terms, the 2003 service agreement says that "any controversy, claim or dispute must be brought by you within one (1) year of the date you are entitled to assert any such claim." R. 24-3 at 4. The arbitrator's conclusion that the service agreement shortened the applicable six-year limitations period to one year and that Ozormoor consented was not in manifest disregard of the law.

Ozormoor next argues that the arbitrator erred by dismissing his claims for intentional infliction of emotional distress and defamation. The arbitrator dismissed those claims because they "arise out of and are premised on the breach of contract claims." R. 23-2. Under Michigan law, to

state a tort claim "in a contractual setting," the claim "must rest on a breach of duty distinct from [the] contract." *Roberts v. Auto-Owners Ins. Co.*, 374 N.W.2d 905, 909 (Mich. 1985). Ozormoor thus must show that T-Mobile engaged in tortious conduct beyond simply breaching its obligations under the service agreement. *See Hayley v. Allstate Ins. Co.*, 686 N.W.2d 273, 277 (Mich. Ct. App. 2004). To the extent Ozormoor bases his tort claims on T-Mobile's failure to provide adequate service and to pay promised rebates, his claims do not rest on a breach separate from the service agreement. He also bases the tort claims in part on T-Mobile's efforts to collect the early-termination fee by referring his account to a collections agency, which harmed his credit. It is debatable whether this aspect of the claims springs from the service agreement, although it is worth remembering that the terms of the service agreement obligated Ozormoor to pay the early-termination fee. At any rate, Ozormoor has not shown that the arbitrator consciously ignored "clearly defined" legal authority in reaching his decision, as he must to establish a manifest disregard of the law. *Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir. 2000).

Ozormoor also objects to the arbitrator's order that he pay half of the arbitrator's $250 fee. When the district court compelled arbitration, it severed the provision of the service agreement requiring the parties to divide "[a]ll administrative expenses of an arbitration" on the ground that it was unconscionable. R. 9 at 8. The court, however, did not sever the part of the service agreement providing that arbitration would take place under the American Arbitration Association's Wireless Industry Arbitration Rules, R. 24-3 at 2, which says that consumers must pay half of the arbitrator's fee. R. 25-8 at 7. Although the arbitrator could not require Ozormoor to pay half of the *total*

administrative expenses incurred in the arbitration—which included $975 in administrative fees and $250 in compensation for the arbitrator—nothing prevented him from ordering Ozormoor to pay half of his fee—$125—in conformity with these rules.

III.

For these reasons, we affirm.