RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 12a0075p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

SHELTER DISTRIBUTION, INC.,
     *Plaintiff-Appellee,*

  *v.*

GENERAL DRIVERS, WAREHOUSEMEN &
HELPERS LOCAL UNION NO. 89,
     *Defendant-Appellant.*

No. 11-5450

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 05-00138—James D. Moyer, Magistrate Judge.

Decided and Filed: March 16, 2012

Before: KEITH, MARTIN, and GIBBONS, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** Scott D. Soldon, Kyle A. McCoy, SOLDON LAW FIRM, LLC, Shorewood, Wisconsin, for Appellant. Griffin Terry Sumner, C. Laurence Woods, FROST BROWN TODD LLC, Louisville, Kentucky, for Appellee.

_____

## OPINION

_____

BOYCE F. MARTIN, JR., Circuit Judge. Shelter Distribution, Inc. filed this action with the district court seeking to enforce a provision of the collective bargaining agreement between Shelter and General Drivers, Warehousemen and Helpers Local Union No. 89. The provision in question obligates the Union to indemnify Shelter for any contingent liability Shelter may incur as a result of its participation in the pension plan. Under this provision, Shelter claims that the Union is obligated to indemnify Shelter for "withdrawal liability," a liability imposed upon Shelter by 29 U.S.C.

§ 1399(b). The Union argues that it is a violation of public policy for a union to indemnify an employer for any contingent liability to a pension plan established under the Employee Retirement Income Security Act of 1974, commonly referred to as ERISA, as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1381-1461. The district court determined that the provision did not violate public policy and enforced the provision. This is an issue of first impression. We hold that such a provision does not violate public policy and we **AFFIRM** the decision of the district court.

I.

The facts are undisputed. The collective bargaining agreement between Shelter and the Union was scheduled to expire in November 2001. Pursuant to the agreement, the Union notified Shelter that it intended to negotiate the agreement. During negotiations, and prior to agreeing to a new contract, the Union disclaimed its representation of Shelter's employees and terminated the collective bargaining process with Shelter.

Because of the termination of the collective bargaining process, Shelter withdrew from the multiemployer plan. The Central States, Southeast and Southwest Areas Health and Welfare and Pension Fund imposed withdrawal liability against Shelter, and assessed Shelter $57,291.50 for withdrawing from the plan. *See* 29 U.S.C. §§ 1383, 1399(b). Shelter demanded indemnification for this amount from the Union pursuant to Section 8(m) of the collective bargaining agreement. The Union refused and Shelter filed this action in the district court seeking to enforce the indemnification provision.

Section 8(m) of the agreement provides:

> The Employer shall continue to contribute to the Central States, Southeast and Southwest Areas Teamsters Pension Fund, the sum of $49.00 per week per covered employee for the year beginning December 1, 1998, $55.00 per week for the year beginning December 1, 1999, and $61.00 per week for the year beginning December 1, 2000. The Union and the members of the Bargaining Unit have agreed that only the

> liability of the Company to the Pension Benefit Plan of the Central States, Southeast and Southwest Areas Pension Fund are, have been and shall be limited to the actual contributions it makes during the course of the past, present and future Contracts, and the Company shall not be liable for any other obligation or contingent obligation of any kind or nature whatsoever. *The Union shall indemnify the Company for any contingent liability which may be imposed under the Multiemployer Pension Plan Amendments Act of 1980.*

(emphasis added).

The Union opposed the enforcement of the indemnification provision, arguing that the expiration of the agreement rendered the provision void. In the alternative, the Union asserted that the dispute must be submitted to binding arbitration pursuant to a provision in the collective bargaining agreement providing for arbitration in the event of a contractual dispute. After reviewing cross-motions for summary judgment, the district court concluded that the arbitration provision of the agreement was enforceable. The district court stayed the federal proceedings and ordered the parties into arbitration.

During arbitration, the Union argued that Section 8(m) was unenforceable because it violated public policy. The Union asserted that the Multiemployer Pension Plan Amendments Act established a public policy prohibiting employers and unions from shifting withdrawal liability through a negotiated collective bargaining agreement because such a shift defeats the purpose of the statute.

The arbitrator rejected the Union's public policy argument. The arbitrator noted that "there is as of yet no law from the Sixth Circuit" on the issue but that the Third Circuit had ruled on the issue. In *Pittsburgh Mack Sales & Services, Inc. v. International Union of Operating Engineers, Local Union No. 66*, 580 F.3d 185 (3d Cir. 2009), the Third Circuit determined that ERISA and the Multiemployer Pension Plan Amendments Act did not establish a public policy preventing enforcement of a collectively bargained indemnity provision between a union and an employer. Based on *Pittsburgh Mack*, the arbitrator found Section 8(m) enforceable, required the Union to indemnify Shelter, and ordered the Union to pay Shelter $57,291.50. Following the

arbitrator's decision, Shelter moved to dissolve the district court's stay and requested that the district court enforce the arbitrator's award. The Union opposed Shelter's motion, seeking to set aside the arbitrator's award and again arguing that the indemnity provision violated public policy. The district court rejected the argument and upheld the arbitrator's award, also relying on *Pittsburgh Mack*. The Union appeals.

## II.

"We review de novo a district court's grant of summary judgment in an arbitrated labor dispute." *Int'l Union, United Auto., Aerospace & Agric. Implement Workers v. Dana Corp.*, 278 F.3d 548, 554 (6th Cir. 2002) (citation omitted). The scope of that review is extremely limited. *Id.* "As long as the arbitrator's award draws its essence from the collective bargaining agreement, and is not merely his own brand of industrial justice, the award is legitimate." *United Paperworkers Int'l Union v. Misco*, *Inc.,* 484 U.S. 29, 36 (1987) (citation and internal quotation marks omitted). However, "a court may not enforce a collective-bargaining agreement that is contrary to public policy, and . . . the question of public policy is ultimately one for resolution by the courts." *Id.* at 43 (quoting *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers*, 461 U.S. 757, 766 (1983) (internal quotation marks omitted)). The public policy must be explicit, well-defined, and dominant. *Id.* (citing *W.R. Grace & Co.*, 461 U.S. at 766). The relevant public policy is derived "by reference to the laws and legal precedents and not from general considerations of supposed public interests." *MidMichigan Reg'l Med. Ctr. v. Prof'l Emps. Div. of Local 79*, 183 F.3d 497, 504 (6th Cir. 1999) (citation and internal quotation marks omitted).

## III.

In 1974, Congress enacted ERISA, which protects the retirement benefits of employees. *Connolly v. Pension Benefit Guar. Corp.*, 475 U.S. 211, 213-14 (1986); *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 374-75 (1980). ERISA does not address the consequences of an employer's withdrawal from a multiemployer

pension plan.  As the Supreme Court noted in *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 722 n.2 (1984) (citation and internal quotation marks omitted):

> A key problem of ongoing multiemployer plans, especially in declining industries, is the problem of employer withdrawal.  Employer withdrawals reduce a plan's contribution base.  This pushes the contribution rate for remaining employers to higher and higher levels in order to fund past service liabilities, including liabilities generated by employers no longer participating in the plan, so-called inherited liabilities.  The rising costs may encourage—or force—further withdrawals, thereby increasing the inherited liabilities to be funded by an ever-decreasing contribution base. This vicious downward spiral may continue until it is no longer reasonable or possible for the pension plan to continue.

Employer withdrawals also jeopardize the solvency of the Pension Benefit Guaranty Corporation, which was created to provide benefits to plan participants in the event that a pension plan was terminated without sufficient assets to support guaranteed benefits. *Id.* at 720-21.

In response to these problems, Congress amended ERISA by enacting the Multiemployer Pension Plan Amendments Act.  The Multiemployer Pension Plan Amendments Act created withdrawal liability, requiring employers who partially or completely withdraw from a multiemployer pension plan to contribute to the plan a proportionate share of the "unfunded vested benefits."  *Id.* at 725 (citation and internal quotation marks omitted).

The Multiemployer Pension Plan Amendments Act provides that once a plan sponsor determines that an employer has withdrawn from a pension plan, either partially or completely, the sponsor must notify the employer of the amount of liability due, prepare a schedule of payments, and demand payment in accordance with that schedule. 29 U.S.C. §§ 1382, 1399(b)(1).  The employer may ask the plan sponsor to review aspects of its liability determination.  *Id.* § 1399(b)(2)(A).  After reviewing the concerns raised by the employer, the plan sponsor must notify the employer of its final decision,

including the reasons for any changes in the liability determination or schedule of liability payments. *Id.* § 1399(b)(2)(B).

If either the employer or plan sponsor disputes the determination made under sections 1381 through 1399, the disagreement is to be resolved through arbitration. 29 U.S.C. § 1401(a)(1). When arbitration proceedings are completed in favor of one party, any party may bring an action in federal court, no later than thirty days after the issuance of the arbitrator's award, to "enforce, vacate, or modify the arbitrator's award." *Id.* § 1401(b)(2).

Although we have yet to address the public policy concerns of whether a third party may contractually agree to be held liable for an employer's monetary responsibilities under the Multiemployer Pension Plan Amendments Act, our decision in *Pfahler v. National Latex Products Co.*, 517 F.3d 816 (6th Cir. 2007), is instructive. In *Pfahler*, we noted that section 410(a) of ERISA, 29 U.S.C. § 1110(a), provides that "an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy." *Pfahler*, 517 F.3d at 836 (quoting § 1110(a)) (internal quotation marks omitted). We also noted that this provision only "prohibits agreements that diminish the statutory obligations of a fiduciary." *Id.* at 837 (citation and internal quotation marks omitted). In *Pfahler*, we clarified that a fiduciary's indemnification agreement with a third party does not prevent the fiduciary from being held liable, but instead only provides that if the fiduciary is liable, then the third party will compensate the fiduciary for that liability. *Id.* We further concluded that because explicit language in section 1110(b) allows a fiduciary to purchase insurance to cover any potential liability, "it would be illogical to interpret the statute as prohibiting indemnification agreements which accomplish the same thing." *Id.*

As we have noted, the Multiemployer Pension Plan Amendments Act was enacted to correct deficiencies in ERISA and to provide even more security to employee retirement plans. *R.A. Gray & Co.*, 467 U.S. at 723-25. Section 1110(b) has not been

amended since its enactment. If Congress thought that an employer should not be able to contractually obligate a third party to indemnify it for any financial responsibility incurred under ERISA, the enactment of the Multiemployer Pension Plan Amendments Act would likely have amended section 1110 of ERISA to prohibit the insurance provisions of section 1110(b).

There is no logical difference between contracting with an insurance company under section 1110(b) and negotiating an indemnification provision like the provision in Shelter's contract with the Union. Under the agreement, the Union is the entity analogous to the insurance company described in section 1110(b). Here, as in *Pfahler*, there is no violation of section 1110(a) because there was no shifting of the financial liability under the agreement: Shelter was still financially liable to the Fund and the company satisfied its financial obligation. Under the indemnification provision, the Union simply agreed to reimburse Shelter for any financial liability it would incur should any contingent liability be imposed by the pension plan. Thus, we hold that Section 8(m) of the collective bargaining agreement between Shelter and the Union is not a violation of any "well defined and dominant" public policy. Although the Multiemployer Pension Plan Amendments Act sought to minimize the financial burden to a retirement plan when an employer withdrew from a multiemployer plan, and ERISA was designed to protect the pension benefits of employees, these goals still will be served even if indemnification agreements between employers and third parties are allowed, as long as the employer remains primarily liable. *Accord Pittsburgh Mack*, 580 F.3d at 194-95.

IV.

Because the collective bargaining agreement does not violate public policy, we **AFFIRM** the decision of the district court.