**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0003n.06

**No. 13-1316**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 06, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| Bernard J. Schafer; Henry Block, | ) | |
| | ) | |
| Plaintiffs - Appellees, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Multiband Corp. | ) | |
| | ) | |
| Defendant - Appellant. | ) | |
| | ) | |

BEFORE: ROGERS, STRANCH, and DONALD, Circuit Judges.

ROGERS, Circuit Judge. The trustees of employee stock ownership plans settled claims of breach of fiduciary duty and sought indemnification from the parent companies pursuant to contractual provisions that provide for such indemnification. An arbitrator found the indemnification agreements to be invalid under a provision of the Employment Retirement Income Act of 1974 (ERISA), which makes exculpatory agreements unenforceable. The arbitrator's decision would doubtless be reversed if it were a court decision under the precedent of this court, because the arbitrator's reading of the relevant section of ERISA is contrary to our precedent. But the arbitrator's decision reasoned from the statute and the contract, and not in clear disregard of them, such that the arbitrator's decision should not have been vacated by the district court because of the legal error of the arbitrator. Absent extraordinary circumstances, arbitration is supposed to resolve, with finality, legal as well as factual disputes.

In this case, Multiband Corporation appeals the district court's order vacating an arbitrator's finding that an indemnification agreement between Multiband and Bernard Schafer and Henry Block was categorically void as against public policy. The arbitrator relied on § 410(a) of ERISA, which provides that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy." 29 U.S.C. § 1110(a). The district court concluded that the arbitrator had acted in "manifest disregard of the law" by ignoring "clearly established legal precedent (including that of the Sixth Circuit)," and vacated the decision because the validity of indemnification provisions "is clearly defined and the arbitrator refused to heed [this principle]."

Bernard Schafer and Henry Block were the owners and founders of Michigan Microtech, Inc., a company that sells and installs satellite television equipment. In 2003, they acquired partial ownership and management interests in DirecTECH, and became members of the board of directors of DirecTECH. DirecTECH executed indemnification agreements with Schafer and Block, which provided the following:

> The Company hereby agrees to indemnify and hold the Board Member harmless from and against any and all past, present, or future losses, claims, damages, expenses, or liabilities (including, but not limited to, reasonable attorney's fees, court costs, judgments, fines, excise taxes related to litigation or aggregate amount pain [sic] in reasonable settlement of any actions, suites [sic], proceedings, or claims) (hereinafter collectively referred to as "Loss"), incurred in connection with any and all actions, proceedings, or suits of any kind or nature whatsoever, which arises as a result of acts or omissions of the Board Member within the scope of his activities for and on behalf of the Company and which do not involve deliberate wrongful acts or gross negligence by the Board Member.

Microtech subsequently executed identical indemnification agreements with Schafer and Block. Microtech then created an employee stock ownership plan ("ESOP") and an employee stock ownership trust ("ESOT"). Schafer and Block were named as trustees of the Microtech ESOP, which executed another nearly identical indemnification agreement in favor of Schafer and Block. DirecTECH also formed an ESOP and an ESOT, but Schafer and Block were not named as trustees.

Microtech and DirecTECH then joined with two other companies, DirecTECH Southwest, Inc. and JBM, Inc. to form a holding corporation, DirecTECH Holding Company, Inc. Owners of these four entities exchanged their ownership interests for shares of stock in the holding company, and the holding company became the parent company of all four entities. The holding company then formed its own ESOP and ESOT. Schafer and Block became directors of the holding company, and trustees of its ESOP and ESOT. Another indemnification agreement (nearly identical to the earlier agreements) was executed in favor of Schafer and Block in their capacity as directors of the holding company and trustees of the ESOP. The agreement also contained a mandatory arbitration clause.

In 2005, the Department of Labor ("DOL") began investigating the Holding Company and its four subsidiaries because they suspected that the directors and trustees had breached their fiduciary duties by purchasing company stock for the ESOPs at inflated prices. Around this time, Multiband began negotiating to purchase the holding company (DirecTECH). In 2009, after Multiband had been fully informed of the ongoing DOL investigation, the purchase was completed. Multiband agreed to indemnify Schafer and Block for any losses "which arise as a result of acts or omissions of the Board Member within the scope of his activities for and on behalf of [the Holding

Company]. . .which do not involve deliberate wrongful acts or gross negligence by the board member." Multiband also assumed the agreements and obligations of the holding company, including the indemnification agreements with Schafer and Block. Schafer and Block assert that these agreements with Multiband were material terms of their contract to sell the holding company.

In 2009, following the purchase, the DOL informed Schafer and Block that they had breached their fiduciary duties by allowing the various ESOPs to purchase company stock at inflated prices, and offered to settle the case for $42 million. Pursuant to the terms of the indemnification agreement, Schafer and Block requested that Multiband indemnify them. Multiband refused. In 2011, after the DOL filed suit against Schafer and Block, and without admitting any liability, Schafer and Block agreed to pay the DOL $1,450,000 each. Again, they requested indemnification from Multiband, and again, Multiband refused to pay.

Schafer and Block filed an arbitration complaint against Multiband for its refusal to indemnify them, as required by the terms of the indemnification agreements. Multiband defended its decision on the grounds that the agreements were void as against public policy under § 1110(a) of the Employee Retirement Income Security Act (ERISA), which provides that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy." 29 U.S.C. § 1110(a). The same statutory section includes, however, an exception for a plan that "purchase[es] insurance for its fiduciaries or for itself to cover liability or losses occurring by reason of the act or omission of a fiduciary, if such insurance permits recourse by the insurer against the

fiduciary in case of a breach of a fiduciary obligation by such fiduciary." 29 U.S.C. § 1110(b)(1).

The three issues submitted to the arbitrator were as follows:

> 1) Inducement Indemnities. Is an agreement between a former fiduciary to an ESOP (Block/Schafer), on one hand, and a third party stranger to the ESOP (Multiband), on the other, invalid or unenforceable under 29 U.S.C. § 1110, as a matter of law, where the third party agrees to indemnify the fiduciary against claims arising from its past acts or omissions as a fiduciary?
>
> 2) Assumption Agreements. Is an agreement between a company sponsoring an ESOP (DTHC), one hand, and a third party stranger to the ESOP (Multiband), on the other, invalid or unenforceable under 29 U.S.C. § 1110, as a matter of law, where the third party agrees to indemnify the company's directors and former trustees to the ESOP (Block/Schafer) against claims arising from their past acts or omissions as fiduciaries?
>
> 3) Does the payment of a settlement in the DOL Litigation render the indemnity agreements inapplicable or void under 29 U.S.C. § 1110 as a matter of law?

The arbitrator determined that, "Distilled to their essence, all three issues pose a single question: Are the indemnity agreements invalidated by operation of ERISA Section 410(a), 29 U.S.C. § 1110(a)." The arbitrator cited numerous federal cases, including Sixth Circuit case law, holding that indemnification agreements are in fact permitted under ERISA. The arbitrator noted, however, that "in the context of ESOP plans, some courts have invalidated indemnity agreements requiring an employer to indemnify a fiduciary, finding such agreements are, in effect, indemnification by the ESOP." The arbitrator then interpreted the text of § 410(a) as "clear and unambiguous" that "[i]ndemnity agreements do not fall within this statutory scheme," that is, that they do not fall within the statutory exception for insurance agreements. For that reason, the arbitrator likewise concluded

that "although nearly contemporaneous with the statute's enactment, the Department of Labor interpretive bulletin [permitting indemnification agreements under ERISA] is entitled to no deference." The arbitrator reasoned,

> The current economy offers further support for this view. The Claimants were, and the Respondent is, engaged in providing access to electronic information. This is an area, which, at this time, is constantly changing, as technology is being developed and refined. A company that looks stable and well able to provide security for an ERISA plan today, may show itself unable to hold its place in this changing environment.

The arbitrator declared the agreements invalid.

Schafer and Block filed suit in federal court, seeking to have the arbitrator's decision vacated because "the Arbitrator expressly disregarded controlling federal law and held for the first time in American jurisprudence, that Section 1110 categorically bars all private indemnification agreements between plan fiduciaries and third parties." The court found that "manifest disregard of the law" survives as a basis for vacating an arbitrator's decision, and held that the arbitrator committed more than "a mere error in interpretation or application of the law" when he decided that ERISA does not permit indemnification agreements. Instead, the arbitrator's conclusions were, according to the court, "contrary to clearly established legal precedent" of which the arbitrator was aware, but chose to ignore. The district court therefore vacated the arbitrator's decision. Multiband timely appeals.

Notwithstanding an apparent error of law, the arbitrator did not manifestly disregard the law in concluding that the indemnification agreement between Schafer and Block and Multiband was void as against public policy. His decision therefore should not have been vacated.

The arbitrator's decision did not fall under any of the grounds provided by the Federal Arbitration Act (FAA) for vacating an arbitration award. When courts are called on to review an arbitrator's decision, the review is very narrow; it is one of the narrowest standards of judicial review in all of American jurisprudence. *Uhl*, 512 F.3d at 305. Under the FAA, "a court 'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected 'as prescribed' in §§ 10 and 11. Section 10 lists grounds for vacating an award. *Hall St. Assocs. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). These are:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10. None of the first three bases is even arguably present here. There is also no argument that under the fourth ground the arbitrator exceeded his powers, apart from an argument that, by manifestly disregarding the law, the arbitrator exceeded his powers.

Because the arbitrator, notwithstanding his apparent error of law, did not manifestly disregard the law so as to warrant vacatur of the award, we need not decide whether a manifest disregard of the law legitimately forms a basis for vacatur in the first place, either as an interpretation of the fourth statutory basis for vacatur, or as a fifth, inferred, basis for vacatur. The

issue has not been firmly settled.[1]  But if review for manifest disregard of the law is not permitted,

vacatur was clearly not proper in the instant case.  And if review for manifest disregard of the law

is still permitted, there has not been such a manifest disregard of the law in this case.  Even under

that standard, a "general review for an arbitrator's legal errors" is not permitted.  *Hall St. Assocs.*,

522 U.S. at 585.

It is true that the arbitrator's analysis appears to be legally unsupportable under this circuit's

precedents, such that we would reverse the decision if it had been made by a district court. ERISA

states that "any provision in an agreement or instrument which purports to relieve a fiduciary from

responsibility or liability for any responsibility, obligation, or duty under this part shall be void as

against public policy."  29 U.S.C. § 1110(a).  However, Section 410(b) permits the purchase of

insurance to cover a fiduciary's potential liability.  29 U.S.C. § 1110(b).  Thus, agreements that

---

[1]In *Hall Street*, the Supreme Court held that "the statutory grounds [for vacatur] are exclusive," but went on to say that "[m]aybe the term 'manifest disregard' was meant to name a new ground for review, but maybe it merely referred to the § 10 grounds collectively, rather than adding to them."  *Hall St. Assocs.*, 522 U.S. at 585.  After *Hall Street*, the circuits split over whether "manifest disregard" was still a viable ground for overturning an arbitration decision.  In 2010, the Supreme Court wrote in dicta, "We do not decide whether 'manifest disregard' survives our decision in *Hall Street* as an independent ground for review or as a judicial gloss on the enumerated grounds for vacatur set forth at 9 U.S.C. § 10."  *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 672 n. 3 (2010).  Since *Hall Street*, we have continued to acknowledge "manifest disregard" as a ground for vacatur—albeit not in a published holding.  E.g., *Coffee Beanery, Ltd.* v. WW, L.L.C., 300 F. App'x 415, 418 (6th Cir. 2009) (stating that manifest disregard survives *Hall Street*); *Dealer Computer Servs., Inc. v. Dub Herring Ford*, 547 F.3d 558, 561 n.2 (6th Cir. 2008) (same); *Ozormoor v. T-Mobile USA, Inc.*, 08-11717, 2010 WL 3272620, at *2 (E.D. Mich. Aug. 19, 2010), aff'd, 459 F. App'x 502 (6th Cir. 2012); *but see Grain v. Trinity Health, Mercy Health Services Inc.*, 551 F.3d 374, 380 (6th Cir. 2008) ("Hall Street's reference to the 'exclusive' statutory grounds for obtaining relief casts some doubt on the continuing vitality of that theory.")

exculpate a fiduciary from liability are invalid, but agreements insuring fiduciaries against loss are permissible, so long as plan assets are not used to reimburse a fiduciary actually found liable for breach of duty.[2]  Moreover, as the arbitrator acknowledged, the Department of Labor's view is that "[i]ndemnification provisions which leave the fiduciary fully responsible and liable, but merely permit another party to satisfy any liability incurred by the fiduciary in the same manner as insurance purchased under section 410(b)(3), are therefore not void under section 410(a)."  29 C.F.R. § 2509.75-4.  This court held in *Pfahler v. Nat'l Latex Prods. Co.*, 517 F.3d 816, 837 (6th Cir. 2007) that indemnification agreements are valid: "Given that ERISA explicitly permits parties to insure against possible liability, it would be illogical to interpret the statute as prohibiting indemnification agreements, which accomplish the same thing."  Similarly, in *Packer Engineering, Inc. v. Kratville*, 965 F.2d 174, 176 (7th Cir. 1992), the Seventh Circuit upheld an agreement to indemnify a fiduciary who had been exonerated of charges of breach of duty.  *See also Shelter Distrib. v. Gen. Drivers, Warehousemen & Helpers Local Union No. 89*, 674 F.3d 608, 612 (6th Cir. 2012) (validating indemnification agreements in the context of union pension plans); *Tullis v. UMB Bank, N.A.*, 423 F. App'x. 567, 571 (6th Cir. 2011) (addressing indemnification in the context of employer pension plans).

It is true that in some cases cited by the arbitrator an indemnity agreement has been treated as in effect an exculpatory agreement where the payment of the indemnity would, or could,

---

[2]Schafer and Block admit that such an agreement would have "the same *effect* as an exculpatory provision, in that it effectively abrogates the plan's ability to recover."

adversely affect the resources of the victim of the fiduciary violation. A number of courts have invalidated indemnity agreements because they would have some sort of financial impact on the plan itself. *E.g. Johnson v. Couturier*, 572 F.3d 1067, 1080 (9th Cir. 2009); *Donovan v. Cunningham*, 541 F. Supp. 276, 289 (S.D. Tex. 1982) *rev'd in part on other grounds*, 716 F.2d 1455 (5th Cir. 1983); *Fernandez v. K-M Indus. Holding Co.*, 646 F. Supp. 2d 1150 (N.D. Cal. 2009) (all voiding agreements to indemnify ESOP fiduciaries as functionally equivalent to the plan's indemnifying itself). The arbitrator however made no finding that the indemnity in this case could adversely affect the interests of the victims of the trust violation. His analysis was instead simply that reimbursement not clearly identified as "insurance" is not permitted under the statute. *Bernard J. Schafer & Henry Block v. Multiband Corp.*, Case No. 1340008997, Arb. Dec., 11.

Legal error by the arbitrator—even clear legal error—is however not by itself sufficient for vacatur of an arbitration agreement. One of the advantages of arbitration is the avoidance of the expense of appeals, and the avoidance of such costs would be undermined by permitting appeals based on clear error of law. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219-220 (1985) (recognizing that one of the primary goals of the Arbitration Act is the encouragement of efficient and speedy dispute resolution). Even assuming that manifest disregard of the law is a basis for vacatur of an arbitral decision, the scope of the basis has to be very narrow. Manifest disregard of the law is not just manifest error of law. If the arbitrator expressed disagreement with the law, rather than interpretation of the law, that might suggest "disregard." But there is little evidence of that in the arbitrator's decision. Instead, the arbitrator relied on a very broad "plain" reading of the ERISA

provision invalidating contractual provisions that relieve a fiduciary of liability, and relied on a narrow and formal meaning of the insurance exception to that provision. The arbitrator also relied on precedents that we can distinguish. Even together, however, this is not enough to show a manifest (as opposed to possible, or even likely) disregard (as opposed to questionable reading) of the law.

Moreover, the very idea that an arbitral decision is not appealable for legal error leads to the conclusion that the arbitrator is not necessarily bound by legal holdings of this court. If an arbitrator relies on a colorable meaning of the words of the statute—as the arbitrator did here—the fact that there is Sixth Circuit precedent to the contrary is not necessarily determinative. Sixth Circuit holdings are binding in courts and on agencies whose decisions are appealable to the Sixth Circuit, ultimately because of that appealability. An arbitrator cannot reject the law, but can disagree with nonbinding precedent without disregarding the law.

The narrow nature of our review and the policies underlying the finality of arbitral decisions accordingly preclude vacatur in this case. The judgment of the district court is reversed and remanded for further proceedings consistent with this opinion.