BREWINGTON *v.* LOWE.

A Court will not take cognizance of a suit which appears, by the statements of both parties, to be fictitious.

May Term,
1848.

BREWINGTON
v.
LOWE.

| 1 | 21 |
| 140 | 346 |
| 1 | 21 |
| 145 | 73 |

Tuesday,
May 23.

ERROR to the *Dearborn* Circuit Court.

Mr. *O. H. Smith,* on behalf of *Ohio* county, and as *amicus curiæ,* suggested to the Court that this was a fictitious suit. He insisted, therefore, that it was due to the Court for its own protection, and to those to be harassed by the proceedings, that the writ of error should be dismissed. He offered to prove the truth of the suggestion, and referred to the following authorities: Cowp. R. 37, 729.— 1 T. R. 56.—4 Johns. R. 434.—Wright's R. 91.

SMITH, J.—The record in this case purports to contain the proceedings in an action of trespass *quare clausum fregit,* instituted in the *Dearborn* Circuit Court by *Joshua Brewington* against *George P. Lowe.* The declaration contains five counts, the *locus in quo* specified in each count being different. The defendant pleads in abatement to the jurisdiction of the Court, that the said several closes, in the first, second, and third counts mentioned, are situate within the county of *Ohio,* and that the closes in the fourth and fifth counts mentioned are within the county of *Ripley.* The replications allege that all of said closes are in the county of *Dearborn,* tendering issues to the country. The cause was then submitted to the Court for trial, and there was a finding and judgment for the defendant.

By a bill of exceptions it appears that upon the trial the following facts were admitted: 1. That the closes described in the second and third counts of the declaration are situate in that territory stricken or attempted to be stricken from *Dearborn* county to form and organize *Ohio* county by the act of the legislature of the 4th of *January,* 1844; 2. That the close described in the first count is situate in the territory stricken or attempted to be stricken from *Dearborn* county, and added or attempted to be added to *Ohio* county by the act of the 7th of *January,* 1845; 3. That the closes in the fourth and fifth counts

mentioned are situate in that part of *Dearborn* county taken or attempted to be taken to form part of *Ripley* county by the act of *December* 27th, 1816. It also appears that, upon the trial, the plaintiff offered certain testimony with a view of establishing the fact that, by the act of the 27th of *December*, 1816, detaching a portion of the county of *Dearborn* for the formation of the county of *Ripley*, the former county was reduced so as to contain less than four hundred square miles of territory, and that, consequently, that act, as well as the subsequent acts forming the county of *Ohio* out of the territory then remaining to *Dearborn* county, were, so far as regarded the rights of the latter county, unconstitutional and void, and could not divest the Courts of that county of the jurisdiction they had previously been authorized to exercise within the limits of the territory thus attempted to be detached. This testimony was excluded by the Circuit Court on the ground that it was not competent for the Court to hear testimony, the object of which was to show that the several acts of the legislature, above referred to, were void by reason of their unconstitutionality.

In the history given of this case by the counsel for the plaintiff in error, and his statement is confirmed by the counsel for the defendant, we are informed that this suit was not instituted to settle any matter really in controversy between the nominal parties, but as a device by certain persons, who believed "that the legislature had been imposed upon as to the quantity of land in *Dearborn* county," when the acts above referred to were passed, and were desirous to test the constitutionality of those acts by bringing them in question in some way before a judicial tribunal. These persons accordingly procured surveys to be made of the territory embraced within the counties of *Dearborn* and *Ohio*, and then instituted this action avowedly for the purpose of testing the constitutionality of the acts of the legislature forming the counties of *Ripley* and *Ohio* by describing closes in the different counts of the declaration situate in each of the several pieces of territory which had been taken by those acts

from the county of *Dearborn*, and thus raising an issue as to the jurisdiction of the *Dearborn* Circuit Court within the territory thus detached.

We think these proceedings were instituted under a mistaken apprehension of the proper functions of the judiciary. Courts of justice are established to try questions pertaining to the rights of individuals. An action is the form of a suit given by law for the recovery of that which is one's due, or a legal demand of one's right. Co. Litt. 285. In such actions, if there is found to be a conflict of laws as they relate to the particular case under consideration, whether such conflict arises from constitutional reasons or otherwise, there can be no doubt that, from the very nature of the case, a decision must be rendered according to the laws which are paramount. But Courts will not go out of their proper sphere to determine the constitutionality or unconstitutionality of a law. They will not declare a law unconstitutional or void in the abstract, for that would be interfering with the legislative power which is separate and distinct. It is only from the necessity of the case, when they are compelled to notice such law as bearing upon the rights of the parties to a question legally presented for adjudication, that they will go into an examination of its validity, and then the decision has reference only to that particular question, except so far as it may operate as a precedent, when it may afterwards become necessary to decide similar cases. But unless some individual right, directly affecting the parties litigant, is thus brought in question so that a judicial decision becomes necessary to settle the matters in controversy between them relative thereto, the Courts have no jurisdiction; and it would be a perversion of the purposes for which they were instituted, and an assumption of functions that do not belong to them, to undertake to settle abstract questions of law in whatever shape such questions may be presented. The impropriety of doing so in the present case is manifest from the facts, that the question professed to be litigated, considered with reference either to the point of law attempted to be raised, or

May Term, 1848.

the importance of the interests involved, is one of very grave character, and the parties who would be chiefly affected by its decision are not before the Court, and have no opportunity of being heard. Indeed, it is well settled that Courts will not take cognizance of fictitious suits, instituted merely to obtain judicial opinions upon points of law. *Longhead* v. *Bartholomew*, Wright's R. 90.—*Hoover* v. *Hanna*, 3 Blackf. 48.—4 Johns. 434.—Cowp. 37, 729.—1 T. R. 56.—2 *id.* 610.—3 *id.* 697.—1 C. & P. 613.

As we are distinctly informed by both parties that this is a fictitious suit, without inquiring into the grounds upon which the judgment was rendered, as it was for the defendant and only for costs, the judgment below will be affirmed at the plaintiff's costs in this Court.

*Per Curiam.*—The judgment is affirmed with costs.

*E. Dumont*, for the plaintiff.

*J. T. Brown* and *D. Kelso*, for the defendant.