Donald **BLINZINGER**, Administrator, Indiana Dept. of Public Welfare, Indiana Dept. of Public Welfare, Appellants, (Defendants Below),

v.

**AMERICANA HEALTHCARE CORPORATION**, Elkhart-Americana, Inc., d/b/a Americana Health Care Center of Elkhart; Capitol Americana, Inc., d/b/a Americana Healthcare Center of Indianapolis-Midtown, Appellees, (Plaintiffs Below).

No. 49A02–8602–CV–45.

Court of Appeals of Indiana, Second District.

March 23, 1987.

Linley E. Pearson, Atty. Gen., Gordon E. White, Jr., Deputy Atty. Gen., Indianapolis, for appellants.

David F. McNamar, John H. Sharpe, Steers, Sullivan, McNamar & Rogers, Indianapolis, for appellees.

SULLIVAN, Judge.

Americana Healthcare Corporation (Americana) is a provider of Medicaid and Medicare services. The Indiana Department of Public Welfare (Department) compensates Americana for the services it provides under the plans. The compensation is prospective and partly based upon a cost-related projection. I.C. 12-1-7-17 (Burns Code Ed.Repl.1981) *as amended by* P.L. 80-1984 and P.L. 133-1985 *now* I.C. 12-1-7-17.2(b) (Burns Code Ed.Supp.1986) (payments to skilled nursing and intermediate care facilities.)

The Medicaid-Medicare provider status may be terminated by the Department if, after investigation, it finds a statutory or Departmental rule violation. I.C. 12-1-7-15.3(a)(3) (Burns Code Ed.Supp.1986) *as amended by* P.L. 133-1985. Also, a Medicaid-Medicare provider may seek to have its rate of reimbursement increased. *See* 470 I.A.C. 5-4.1-6 (1984 Ed.).

In October, 1980, two of Americana's Indiana facilities were notified that termination[1] was pending. Americana sought and was denied an administrative hearing. Americana then obtained a preliminary injunction in federal court which prevented the Department from acting upon the termination issue. The grant of the preliminary injunction was later overturned by the Seventh Circuit Court of Appeals.

After the preliminary injunction was in place (but prior to the Seventh Circuit's reversal), Americana requested a rate of reimbursement increase. At an administrative hearing conducted May 20, 1982, upon the rate increase issue, both Americana and the Department agreed that the issue whether, and in what amount, Americana would receive a rate increase would be resolved subsequent to the question whether pending decertification barred any consideration of increased reimbursement. Solely for purposes of establishing "standing", Americana sought to introduce evidence which would demonstrate harm caused by a rate increase denial. The evidence was considered only for that purpose.

The Department determined that it would not take action on the request because of the pending termination action. The reviewing court reversed the Department's decision, concluding that the Department had erred in failing to promulgate the "no action directive"[2] in accordance with I.C. 4-22-2-1 (Burns Code Ed. Repl.1986) *repealed by* P.L. 31-1985, *see* I.C. 4-22-2-13 to -44 (Burns Code Ed.Repl. 1986). The reviewing court then ordered the Department to,

"consider and determine the increase in rates requested by the plaintiffs with all due haste in order to minimize any further damages which may have accrued as a result of the agency's unlawful refusal to consider the request for increase of the rates of Medicaid reimbursement to

---

1. The process of termination was known as "decertification" prior to the 1985 amendments to I.C. 12-1-7-15.3. *See* P.L. 133-1985.

2. The term "no action directive" referred to an internal Department policy letter from the Assistant Administrator which instructed that no rate increases would be considered pending decertification, and which formed the basis of the Department decision.

be paid to the plaintiffs and determine the amounts due and owing plaintiff, if any, by reason of this wrongful refusal to consider the plaintiffs' request for an increase in rates." Record at 49.

On appeal, this court affirmed the reviewing court's determination that the rule was improperly adopted. *Blinzinger v. Americana Healthcare Corp.* (1984) 2d Dist.Ind.App., 466 N.E.2d 1371.[3] This court thus affirmed the reviewing court's remand to the Department to act upon Americana's rate increase request.

After the appeal, in September, 1984, the Department petitioned the reviewing court to deposit slightly more than $1,100,000. This amount apparently represented the Department's first calculation of the sum due Americana for the 1981 to 1984 period. The court allowed the Department to deposit, and Americana to withdraw, the money. Deposits and withdrawals were repeated in February and March, 1985. On these occasions Americana received approximately $76,000.[4] The deposit and withdrawal procedure was used because a dispute remained as to whether Americana was entitled to interest on funds the Department had withheld. The deposit and withdrawal procedure was apparently designed to prevent accrual of a greater interest obligation, if, after litigating the issue, one indeed existed.

During the deposit and withdrawal process, Americana filed a motion for partial summary judgment, in which it claimed entitlement to interest, both prejudgment and postjudgment. The court declined Americana's request to grant it prejudgment interest because the issue had not been presented prior to the motion for summary judgment. The court did, however, grant Americana postjudgment interest, pursuant to I.C. 34-2-22-1 (Burns Code Ed.Repl.1986), from forty-five days following June 29, 1983, the date upon which the trial court originally remanded the matter to the Department for consideration of the request for a rate increase. From this order, both parties prosecute appeals.

We reverse.

Despite its rather convoluted nature, the procedural history here is more notable for its omissions rather than its occurrences. After this court affirmed the reviewing court, the cause was remanded for the Department's consideration without regard to the pending termination action. From the record before us, it does not appear that the Department acted upon this remand. Rather, the Department chose to pay funds into, and Americana chose to withdraw those funds from, the court. There is simply no affirmative showing in the record that the Department acted upon the rate increase request. Neither is there an affirmative showing that the Department and Americana fully and finally agreed upon an amount to be paid.[5] Nor is there any information in the record which demonstrates that the Department or Americana communicated to the trial court that a finalized agreement had been reached, how that agreement was reached, or the terms of the agreement. Finally, there is no doc-

3. In *Blinzinger,* this court also reversed the trial court in part. The issue upon which we reversed involved allocation of cost for preparation of the record of administrative proceedings, *Blinzinger, supra,* 466 N.E.2d at 1378, and is not pertinent to this appeal.

4. On October 4, 1984, the Department was allowed to deposit $3,356.00 into court. There is no documentation in the record to indicate that Americana ever withdrew, or tried to withdraw, this figure. Any agreement the parties may have reached concerning reimbursement is certainly not reflected by their deposits and withdrawals. This lack of equal deposits and withdrawals, while not dispositive, is indeed indicative of the perils of assuming that an agreement did exist.

5. In their last deposit and withdrawal petitions, neither the Department nor Americana claim the dispute over compensation had been settled. The Department stated that when prior rates were readjusted, the figures of $2,203,546.00, $3,356.00, and $75,986.00 were reached. The petition does not state that these three figures represent the *total* sum due. In its petition for withdrawal, Americana merely states "[T]his sum represents additional principal due and owing between the parties and that the interest issue is still in dispute." Record at 96. Americana's petition did not explicitly foreclose the possibility that more funds were due.

ument present which seeks to invoke specifically the trial court's review powers. These omissions dictate that we reverse the trial court without reaching the merits of the issues which the parties seek to present.

As a prefatory matter, we note the adage, "[a]gree for the law is costly." [6] We commend whatever efforts the parties may have made toward reaching an agreement concerning the compensation due. A non-litigous resolution of a complex issue, such as reimbursement payable under the Medicaid and Medicare programs,[7] is indeed desirable. Such an agreement is often desirable when an agency and a party with which it has an ongoing relationship disagree as to an issue particularly within the agency's expertise. Preserving both judicial resources and the integrity of the administrative process are important goals served by a perhaps less formal and costly resolution procedure.

■ Nevertheless, we must reverse because the reviewing court had before it no judicially cognizable order, decree or agreement upon which it could exercise its authority to award interest.[8] The trial court's difficulty in ascertaining both a date and a dollar figure, for the purpose of calculating "postjudgment" interest, demonstrates this point. Apparently there were three deposits and only two withdrawals, leaving more than $3,000 with the court presently. There is nothing in the record before us to support a conclusion that the principle amount of the obligation or its due date had been fully settled.

Moreover, the fact that the reviewing court attached interest to a remand order underscores the lack of an appropriate order, decree or agreement in any form. The

court's remand entry, prior to the first appeal, directed the Department to consider diligently the rate increase issue. It neither fixed a date nor fixed an amount for payment, and could not be considered the equivalent of a money judgment. *Cf., Indiana Revenue Board v. State ex rel. Bd. of Commissioners of Hendricks County* (1979) 270 Ind. 365, 385 N.E.2d 1131 (trial court's mandate order, specifying fixed sum payment by agency to court was effectively a money judgment to which interest could attach). Also, the evidence underlying the remand order would not have supported a determination equivalent to a money judgment. Both the Department and Americana recognized that the marginal increase due, if any, would be established subsequent to disposition of the question whether pending termination foreclosed a rate increase. Americana had not presented evidence to the Department, or the reviewing court, as to the precise increase it believed was due. With no evidence supporting a mandate order for payment of funds, the initial review court did only what it could—remand for consideration. *See Blinzinger, supra,* 466 N.E.2d at 1375. Thus the remand order fixed no amount due, nor fixed a date at which the obligation became due. It could not function as an order which permitted an award of interest.

The record discloses no other event or procedural device present which would have permitted the court below to exercise its authority in making its second judgment entry.

■ An important cornerstone of judicial review of administrative decisions is the finality requirement. " 'Courts are reluctant to review interim steps of an adminis-

---

**6.** Camden, *Remains Concerning Britain: Proverbs* (1674).

**7.** The parties agree that the compensation issue is "complex" and "difficult." (Appellant's Brief at 14; Appellee's Brief at 13). A cursory review of 470 I.A.C. 5–4.1–1 to –27 (1984) (Rate Setting Criteria for Intermediate Care and Skilled Nursing Facilities ...) supports amply the parties' contentions. The rate setting question involves issues of costs allocable to patient care, staffing and wage requirements, capital return, and the

individual rules governing the propriety of the expense for each.

**8.** It is possible that the court below, after remand, retained authority over the case to some degree. *See e.g., Department of Public Welfare v. Rynard* (1980) 1st Dist. Ind.App., 403 N.E.2d 1110, *modified on other grounds,* Ind., 472 N.E.2d 888; *see* 428 N.E.2d 263, where the court entertained a motion for summary judgment to enforce an order of a remand.

trative body which are not, or have not become final.' " *Indiana Alcoholic Beverage Commission v. McShane* (1976) 2d Dist., 170 Ind.App. 586, 598, 354 N.E.2d 259, 267, quoting *Downing v. Board of Zoning Appeals of Whitley County* (1971) 149 Ind.App. 687, 690, 274 N.E.2d 542, 545. As a result of this reluctance, courts will not generally intercede in the administrative process until the agency has ended its proceedings, finally determined a party's rights, and has no further actions to complete. *Downing, supra.* An anticipated agency action does not constitute the requisite degree of finality.

The requisite degree of finality may or may not have been reached in this case. Possibly the Department believes that it has completed its determinative processes and has fully compensated Americana through the court deposits. Possibly the Department believes that it has reached an agreement with Americana as to compensation due and therefore no other action was or is necessary concerning the rate increase. In any event, the Department's subjective views about the matter were never formalized and communicated to the reviewing court. As the record presently stands, we might surmise that the Department had concluded its proceedings, especially in light of what appears to be a lack of internal activity, other than the deposits. Yet that conclusion would remain only guesswork.[9]

■ We do not mean to elevate formality above finality. We do mean to say that without some element of the former, deciding whether the latter existed is reduced to conjecture. Embraced within the finality concept is the idea of a "final order." Before the reviewing court can work its will upon an agency decision, that decision's terms must be made known to the court in some appropriate fashion. Here, that decision may have taken on a form analogous to a consent decree, or it may have been memorialized more in the form of an adjudicatory, dispositional order. Nothing resembling either of these can be found here.

The parties would perhaps point to the deposit and withdrawal process as evidencing an agreement, transformable into a "final order." The trial rule under which the funds were deposited and withdrawn, Indiana Rules of Procedure, Trial Rule 67(A), does not speak to whether a deposit in court may function as a liability admission. By contrast, the interpleader rule, Indiana Rules of Procedure, Trial Rule 22, clearly contemplates that deposit of the "stake" is not a liability admission; the stakeholder may deposit the stake (as a requisite to sustaining the action) but still lodge a claim, total or partial, of ownership or entitlement. T.R. 22(C)(1); *See also* I.C. 32–11–1–8(4) (Burns Code Ed.Repl.1980); I.C. 34–1–12–4 (Burns Code Ed.Repl. 1986).[10]

The significance of the deposit and withdrawal process is problematic. Our Trial Rule 67 and its counterpart in the Federal Rules would appear not to assist in our interpretive challenge. Trial Rule 67 contemplates deposit of moneys into court prior to judgment but, insofar as pertinent, only in actions in which at least part of the relief sought is a judgment for a sum of money. As noted, in the matter before us the relief sought was consideration of a rate increase without regard to the pending termination proceedings. The payment of money was not the direct subject of the review proceeding but was merely incident to the subject of the dispute. *See* 23 Am. Jur.2d, *Deposits In Court* § 2 (1983).

---

**9.** The difficulty with review, in large measure, may be occasioned by the Department's failure to take formal action when previous judicial review has resulted in a remand. An additional preventative measure could be specific instructions from the reviewing court to the agency on remand, or perhaps retention of jurisdiction pending further action (in appropriate situations). *See Department of Public Welfare v. Crescent Manor* (1981) 4th Dist. Ind.App., 416 N.E.2d 470.

**10.** I.C. 32–11–1–8(5) provides that the defendant in a condemnation procedure may withdraw the sum tendered into court by the condemnor without waiving objections the party may have to the appraisers' reports. I.C. 34–1–12–4 makes no explicit provisions concerning liability admissions and deposits in court in the context of a receivership action.

The ostensible purposes of a deposit, to stop interest accrual and to prevent liability for caretaking of the object during litigation, may not be appropriate when the depositing party denies any liability. *See Id.* at § 3 (1983). *But see* Federal Rules of Civil Procedure, Rule 67, which permits deposit even though the depositor claims all or any part of the amount.[11] Nevertheless, in the matter before us we simply do not know whether the Department deposited the moneys solely to stop interest in the event that some amount was thereafter found to be owed, or whether the Department was conceding liability at least to the extent of the moneys paid in but denying any liability for interest. But whether we couch the effect in terms of an "admission" or "estoppel" or otherwise, we need not decide what the precise consequence of the deposit-withdrawal may be. The fact remains that there is no viable judgment, agreement or order upon which the court below could impose a determination.

Nothing of record would permit the conclusion that something akin to a consent decree, emanating from either the Department or the court, existed in this case. "The essence of a consent decree is that the parties have voluntarily entered into a contract setting the dispute at rest, on which contract the court has entered judgment conforming to the terms of that request." *Rosenmeier v. Krauss* (1947) 118 Ind.App. 57, 65, 75 N.E.2d 798, 802. The parties' petitions on deposit and withdrawal suggest that the interest question was being presented to the court, while the principle compensation issue was apparently being resolved between them. This cannot be construed as a request for a consent decree. By their own terms, the petitions seek to have one issue resolved by the court, without the parties' consent, while another issue might possibly be resolved by consent. Nothing shows clearly the existence of an agreement; nothing shows clearly that the court formally recognized one. There is no support for a conclusion

that a consent decree was intended or accepted.

Nor can it be said the documentation presented to the trial court could be construed as a justiciable request for a declaratory judgment. Just as no agreement is evidenced by the record, no dispute is presented by it. From the record, it appears that departmental action was pending, based upon the earlier remand. The parties' disagreement (or ultimate agreement) was before the Department. Without the requisite final order from the Department, the court below could not afford the parties relief under a declaratory judgment theory. Its judgment would have been, at minimum, partially dependent upon the Department's resolution of the issues. The dispute, while it may have existed, was not yet appropriately before the court for relief in the form of a declaratory judgment. *See Thompson v. Medical Licensing Board* (1979) 2d Dist. 180 Ind. App. 333, 343–44, 389 N.E.2d 43, 50, *reh. denied* 180 Ind.App. 333, 398 N.E.2d 679, *cert. denied* (1980) 449 U.S. 937, 101 S.Ct. 335, 66 L.Ed.2d 160 ("[C]ourts have been reluctant to grant declaratory relief if the result is to bypass administrative procedure."); *Cf.* I.C. 34–4–10–6 (Burns Code Ed.Repl.1986) (a court may refuse to grant declaratory relief if such relief would not terminate the uncertainty).

With no dispute appropriately before it, the trial court erred in rendering its judgment. This conclusion may seem overly formalistic, particularly in the administrative review context. We cannot, however, allow invocation of the judicial process concerning matters upon which a court could not grant full relief, despite the apparent ease and efficiency of presenting abstract questions of law to a court. To approve such a practice could become a tacit approval of advisory opinions, which have long been disapproved by Indiana courts. *See Brewington v. Lowe* (1848) 1 Ind. 21, 24 ("[I]t would be a perversion of the purposes for which they [courts] were instituted, and an assumption of functions that do

---

**11.** Indiana Trial Rule 67 does not contain the amendatory language placed in the Federal Rule in 1983.

not belong to them, to undertake to settle abstract questions of law in whatever shape such questions may be presented.")

The judgment is reversed.

SHIELDS, P.J. and BUCHANAN, J., concur.