NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0534n.06

Nos. 23-5092/5095

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Dec 20, 2023
KELLY L. STEPHENS, Clerk

|  |  |  |
| --- | --- | --- |
| THOMAS JOSEPH BUCK, | ) | |
| | ) | |
| Plaintiff - Appellant / Cross - Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| JANICE J. COMPTON, | ) | |
| | ) | OPINION |
| Defendant - Appellee / Cross - Appellant. | ) | |
| | ) | |

Before: BATCHELDER, GRIFFIN, and LARSEN, Circuit Judges.

GRIFFIN, Circuit Judge.

Thomas Buck, a former financial advisor, defrauded several of his clients, including Janice Compton. Following Buck's criminal conviction for fraud, Compton sued Buck, and the parties submitted their dispute to binding arbitration through the Financial Industry Regulatory Authority. The arbitration panel found Buck liable and awarded damages to Compton. Buck then moved in federal court to vacate the arbitration award, alleging that the arbitrators "manifestly disregarded the law" in several different ways. The district court denied Buck's motion to vacate and granted Compton's motion to confirm the award. We affirm the denial of Buck's motion to vacate and the grant of Compton's motion to confirm, deny Compton's motion for sanctions, and remand for consideration of Compton's requests for pre- and post-judgment interest.

I.

A.

*Buck's fraud against Compton.* Thomas Buck and Janice Compton were longtime friends when Compton asked Buck—then a financial advisor at Merrill Lynch Fedder & Smith, Inc.—for help investing her money. From 2009 through 2015, Buck managed Compton's money in Merrill Lynch accounts.

During this time, Buck traded Compton's accounts excessively, generating commission income for himself on both purchases and sales, and entered trades without first obtaining Compton's authorization. While managing Compton's accounts, Buck placed over 1,100 trades, generating about $1.4 million in fraudulent commissions for Buck and Merrill Lynch. He also kept Compton's money in commission-based accounts despite knowing that she would have saved money by using accounts that charged only a management fee. This fraudulent management caused Compton's accounts to underperform the market by about $7 million.

Buck's fraudulent activity stopped in 2015 when Merrill Lynch fired him following an internal investigation. After he was fired, Buck surrendered his securities license to the Financial Industry Regulatory Authority (FINRA).

Two years later, the U.S. Attorney's Office for the Southern District of Indiana, charged Buck with securities fraud under 18 U.S.C. § 1348 via an information. Although the information did not mention Compton by name, it alleged that Buck engaged in a scheme to defraud "certain clients" through his investment advising. The information described Buck's fraud against several specific clients—identified as Clients A, B, and C—by way of "example." Buck pleaded guilty to securities fraud and, as part of his plea agreement, acknowledged that his criminal conduct involved ten or more victims. The government's sentencing memorandum identified Compton as

a victim—Client D—and discussed Compton's victim-impact statement, which the district court considered at sentencing. The court found that Buck's fraud harmed Compton, and ultimately sentenced Buck to 40 months in prison.

B.

*The FINRA arbitration.* A year and a half after Buck's sentencing, Compton filed a claim with FINRA, alleging several causes of action against Buck and Merrill Lynch. Five of those causes of action were against Buck: (1) violations of the Indiana Corrupt Business Influence Act (ICBIA), (2) violations of the federal Racketeering Influence and Corrupt Organizations Act (RICO), (3) civil recovery under Indiana's crime victim statute, (4) breach of fiduciary duty, and (5) fraud. The parties agreed to submit these claims to FINRA arbitration "in accordance with the FINRA By-Laws, Rules, and Code of Arbitration Procedure." And they seemingly agreed to follow Indiana law for purposes of this dispute.[1] In advance of the arbitration hearing, Merrill Lynch settled Compton's claims against it for $5,500,000, and Compton received a payment from the SEC Victim's Fund in the amount of $946,868.

A three-person FINRA arbitration panel ultimately conducted a hearing and provided its unanimous decision in a signed award. The award document provided basic case information, summarized the pre-hearing case activity, and then described Compton's award. The "award" section stated as follows:

> After considering the pleadings, the testimony and evidence presented at the hearing, and any post-hearing submissions, the Panel has decided in full and final resolution of the issues submitted for determination as follows:

---

[1]Although Compton asserts that she did not agree to apply Indiana law to all claims, her pre-hearing brief to the arbitration panel stated that she "will thus forego any argument over choice of law and proceed under Indiana law." Notwithstanding, we analyze Buck's manifest-disregard arguments here by assuming Indiana law applies.

1.      Respondent Thomas Joseph Buck is liable for and shall pay to Claimant the sum of $770,269.00 in compensatory damages.

2.      Respondent Thomas Joseph Buck is liable for and shall pay to Claimant interest on the well-managed damages amount of $5,812,948.80, which represents 80% of the overall loss value of the accounts requested by Claimant, at the rate of 8% per annum from March 25, 2018, through and including March 25, 2022. The total interest awarded is $1,860,144.00. Please note that the Panel is not awarding the well-managed damages amount of $5,812,948.80. It is only basing its interest calculations on the amount of well-managed damages.

3.      Respondent Thomas Joseph Buck is liable for and shall pay to Claimant the sum of $2,310,806.00 in treble damages pursuant to 18 U.S.C. 1964(c) - the Racketeer Influenced and Corrupt Organization Act, and the Indiana Corrupt Business Influence Act (Indiana Code Ann. § 35-45-6-2).

4.      Respondent Thomas Joseph Buck is liable for and shall pay to Claimant the sum of $2,585,232.00 in attorneys' fees pursuant to 18 U.S.C. 1964(c) - the Racketeer Influenced and Corrupt Organization Act, and the Indiana Corrupt Business Influence Act (Indiana Code Ann. § 35-45-6-2).

5.      Respondent Thomas Joseph Buck is liable and shall reimburse Claimant the sum of $375.00, which represents the non-refundable portion of the filing fee previously paid by Claimant to FINRA Dispute Resolution Services.

6.      Any and all claims for relief not specifically addressed herein are denied.

Buck's total liability in damages and fees amounted to over $7.5 million.

C.

*Federal court proceedings.* Following the arbitration decision, Buck moved in federal court to vacate the arbitration award. Compton opposed and petitioned to confirm the award. In her petition, Compton also sought an order awarding pre- and post-judgment interest. The district court denied Buck's motion to vacate and granted Compton's petition to confirm. The order did not address Compton's requests for pre- or post-judgment interest.

The parties cross-appealed—Buck on the motion to vacate and Compton on her unaddressed requests for interest. After Buck appealed, Compton moved for sanctions, arguing that Buck's appeal was frivolous.

II.

A.

On appeal from a petition to vacate or confirm an arbitration award, we apply two standards of review—one for the district court's decision and the other for the arbitrators' decision. We review the district court's factual findings for clear error and its legal conclusions de novo. *McGee v. Armstrong*, 941 F.3d 859, 867 (6th Cir. 2019). But to review the arbitrators' decision, we apply "one of the narrowest standards of judicial review in all of American jurisprudence." *Samaan v. Gen. Dynamics Land Sys., Inc.*, 835 F.3d 593, 600 (6th Cir. 2016) (citation omitted). Under that narrow standard, we "must refrain from reversing an arbitrator simply because the court disagrees with the result or believes the arbitrator made a serious legal or factual error." *Id.*

This narrow review springs from the Federal Arbitration Act, which "expresses a presumption that arbitration awards will be confirmed." *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 429 F.3d 640, 643 (6th Cir. 2005) (citing 9 U.S.C. § 9). Under the Act, when a party seeks confirmation of an arbitration award in federal court, the district court "*must* issue an order confirming an arbitrator's award 'unless the award is vacated, modified, or corrected as prescribed in' 9 U.S.C. §§ 10 and 11." *Samaan*, 835 F.3d at 600 (quoting 9 U.S.C. § 9) (emphasis added).

Section 10(a) of the Act governs requests to vacate an arbitration award. That section enumerates four grounds on which a district court may vacate an award. 9 U.S.C. § 10(a)(1)–(4). As the Supreme Court held in *Hall Street Associates, L.L.C. v. Mattel, Inc.*, the grounds listed in § 10(a) are the "exclusive" grounds on which a federal court may vacate an arbitrator's decision. 552 U.S. 576, 578 (2008).

B.

Buck claims the arbitrators' decision represented a "manifest disregard of the law," yet those words appear nowhere in § 10(a). Derived from dicta in *Wilko v. Swan*, 346 U.S. 427, 436 (1953), the manifest-disregard standard has been described both as a judicially created "alternative" to the Act's four grounds for vacatur, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 421 (6th Cir. 1995), and as a judicial gloss on § 10(a)(4)'s prohibition against arbitrators exceeding their powers, *see Federated Dep't Stores, Inc. v. J.V.B. Indus., Inc.*, 894 F.2d 862, 866 (6th Cir. 1990). Our most recent published opinion on the matter appears to endorse, in dicta, the latter formulation, stating that the standard is "part and parcel of" § 10(a)(4). *In re Romanzi*, 31 F.4th 367, 375 (6th Cir. 2022).

The Supreme Court has declined to resolve whether the standard, in either formulation, survives *Hall Street*. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 672 n.3 (2010). We have repeatedly done the same, *see, e.g.*, *Samaan*, 835 F.3d at 600–01; *Schafer v. Multiband Corp.*, 551 F. App'x 814, 818–19 (6th Cir. 2014); *Hale v. Morgan Stanley Smith Barney LLC*, 2023 WL 2972572, at *3 (6th Cir. Apr. 17, 2023), and do so again here. Although the parties thoroughly briefed whether the manifest-disregard standard is a proper basis for vacatur following *Hall Street*, this case does not require a broad holding on the manifest-disregard standard's fate. Even assuming the standard survives *Hall Street*, Buck's claims of legal error do not amount to manifest disregard of the law.

C.

Although the standard's foundations are questionable, its high bar is well defined. To prove that arbitrators manifestly disregarded the law, the party moving for vacatur must prove two elements: "(1) the applicable legal principle is clearly defined and not subject to reasonable debate;

and (2) the arbitrators refused to heed that legal principle." *Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir. 2000) (quoting *Jaros*, 70 F.3d at 421).

The first element requires that the relevant law be "clearly defined and not subject to reasonable debate." *Id.* At minimum, this element demands the existence of controlling legal authority on the issue. *See, e.g.*, *Jaros*, 70 F.3d at 421 (stating that, for there to be manifest disregard, "the decision must fly in the face of clearly established legal *precedent*") (emphasis added); *Gibbens v. OptumRx, Inc.*, 778 F. App'x 390, 394 (6th Cir. 2019) (holding no manifest disregard where the "arbitrator surveyed relevant caselaw and accurately determined that no authority *controls* the precise question") (emphasis added). Consequently, the challenging party cannot meet this element by citing to only non-controlling authorities. *See Schafer*, 551 F. App'x at 820 ("An arbitrator cannot reject the law, but can disagree with *nonbinding* precedent without disregarding the law.") (emphasis added).

The second element asks whether the arbitrators "refused to heed" the clearly defined legal principle or "consciously chose[] not to apply it." *Dawahare*, 210 F.3d at 669. Inherent in such conscious refusal is the need for proof that the arbitrators "were aware of some relevant law that they chose to ignore." *Romanzi*, 31 F.4th at 375–76 (alteration omitted) (quoting *Dawahare*, 210 F.3d at 671). There must be evidence that, during the arbitration proceedings, "one of the parties clearly stated the law and the arbitrators expressly chose not to follow it." *Dawahare*, 210 F.3d at 670. It would be "illogical to conclude that the arbitrator manifestly disregarded law that [the challenging party] never asked him to consider." *Gibbens*, 778 F. App'x at 395. Thus, the challenging party must demonstrate that the record "shows the arbitrators' awareness of the . . . law that he alleges to be applicable," *Dawahare*, 210 F.3d at 670, and a decision that "fl[ew] in the face of obviously applicable law," *Hale*, 2023 WL 2972572, at *4 (internal quotation

marks omitted) (quoting *Jaros*, 70 F.3d at 421). "When a reasonable judge could 'conceivably' reach the arbitrator's legal conclusion, a manifest-disregard challenge must fail even if we would have reached the opposite one." *Id.* (quoting *Jaros*, 70 F.3d at 421).

Because this element requires proof of conscious refusal to follow the law, evidence of the arbitrators' reasoning is key. After all, "[a]rbitrators are not required to explain their decisions. If they choose not to do so, it is all but impossible to determine whether they acted with manifest disregard for the law." *Dawahare*, 210 F.3d at 669.

D.

Buck asserts five claims of legal error. None amounts to manifest disregard of the law.

1.

Buck's first claim of error relates to the so-called "conviction exception" in the federal RICO statute under 18 U.S.C. § 1964(c). To recover under that statute, a plaintiff must show that her damages resulted from the defendant's "predicate acts." *Vemco, Inc. v. Camardella*, 23 F.3d 129, 133 (6th Cir. 1994); 18 U.S.C. §§ 1962, 1964(a). And a plaintiff cannot cite instances of securities fraud as predicate acts unless the defendant was "criminally convicted in connection with the fraud." 18 U.S.C. § 1964(c). In other words, for Compton to recover under RICO for damages incurred by securities fraud, the conviction exception must apply.

Buck asserts that, for the conviction exception to apply, the defendant must have been criminally convicted of fraud "*against the plaintiff.*" According to Buck, the conviction exception requires the RICO plaintiff to have been named in the information or indictment that led to the defendant's criminal conviction. Because the charging information did not mention Compton by name, Buck argues, the conviction exception does not apply, and the arbitrators should have dismissed Compton's RICO claim.

Buck's interpretation of the conviction exception, however, is not clearly defined by controlling legal authority. RICO's plain language does not resolve whether the plaintiff must be named in the information or indictment. *See* 18 U.S.C. § 1964(c) (defendant's conviction must be "in connection with the fraud" serving as the predicate acts). And the other authorities Buck relies on fare no better. Buck pointed the arbitrators to two district court cases that defined the conviction exception's scope narrowly. *See Krear v. Malek*, 961 F. Supp. 1065, 1077 (E.D. Mich. 1997); *Kaplan v. S.A.C. Cap. Advisors, L.P.*, 104 F. Supp. 3d 384, 389 (S.D.N.Y. 2015). But district court cases are not controlling. *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011). Moreover, district court decisions on this issue are not unanimous. At least one court has found that the conviction exception does not require the plaintiff to be named in the criminal indictment. *See Brooks v. Field*, 2015 U.S. Dist. LEXIS 33950, at *17 (D.S.C. Feb. 20, 2015), *report and recommendation adopted by* 2015 WL 1292775 (D.S.C. Mar. 18, 2015) (declining to "read the criminal conviction exception language so narrowly as to require the indictment to name all [victims of the fraud] by name"). Thus, Buck's argument fails under the first element of the manifest-disregard standard.

2.

Buck next asserts that, by awarding damages for Compton's claim under the Indiana Corrupt Business Influences Act (ICBIA), the arbitrators manifestly disregarded the two-year statute of limitations for such claims. Indiana law imposes a two-year statute of limitations on several types of actions, including those for "a forfeiture of penalty given by statute." Ind. Code § 34-11-2-4(a)(3). Buck argues that Compton's claim under the ICBIA is such an action and therefore subject to the two-year statute of limitations.

Buck again lacks clearly established legal authority for his position. In support of his theory, Buck pointed the arbitrators only to *Branham Corp. v. Newland Resources, LLC*, 17 N.E.3d

979, 987 (Ind. Ct. App. 2014). Yet *Branham* did not hold that the two-year statute of limitations applies to the ICBIA—the parties agreed to apply the two-year statute of limitations, and the court addressed only the question of when the claim started to accrue. *Id.* And in at least one other case, the Indiana Court of Appeals has observed that the statute of limitations applicable to an ICBIA claim is an open question, noting that it could be as long as ten years. *Walther v. Ind. Lawrence Bank*, 579 N.E.2d 643, 648 (Ind. Ct. App. 1991).

3.

Next, Buck contends that the arbitrators manifestly disregarded the law in denying his motion to dismiss based on FINRA's six-year eligibility period under FINRA Rule 12206(a). He claims that the arbitrators manifestly disregarded this rule because the award is based on occurrences that are more than six years old.

But no controlling legal authority prohibited the arbitrators from finding Compton's claims eligible. Although Buck is correct that the occurrences of fraud were more than six years old, Compton brought her claims within six years of discovering Buck's misconduct. FINRA's guidance to arbitrators states that the "occurrence or event giving rise to the [claim]" can be "continuing" due to, for example, "ongoing fraud." Financial Industry Regulatory Authority, *FINRA Dispute Resolution Services Arbitrator's Guide* 48, https://www.finra.org/sites/default/files/arbitrators-ref-guide.pdf (last updated Nov. 2023). And the plain text of the rule itself empowers arbitrators to "resolve any questions regarding the eligibility of a claim under this rule." FINRA Rule 12206(a). That assignment of power tracks the Supreme Court's guidance in *Howsam v. Dean Witter Reynolds, Inc.*, which held that agency rules on time limitations for arbitration eligibility are "presumptively for the arbitrator, not for the judge" to interpret. 537 U.S. 79, 85 (2002).

Buck's argument to the contrary cites only non-controlling authorities, such as a pre-*Howsam* Seventh Circuit case, *PaineWebber Inc. v. Farnam*, 870 F.2d 1286, 1292 (7th Cir. 1989), and several arbitration awards, which lack precedential value, *see Equitable Res., Inc. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO/CLC*, 621 F.3d 538, 553 (6th Cir. 2010). Accordingly, Buck fails to show that his preferred, narrow interpretation of FINRA Rule 12206(a) is clearly defined.

4.

Buck next argues the arbitrators impermissibly awarded Compton "quadruple damages," instead of the threefold damages allowed under the RICO and ICBIA statutes. *See* 18 U.S.C. § 1964(c) (stating that a claimant "shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee"); Ind. Code § 34-24-2-6 (permitting several types of damages, including "an amount equal to three (3) times the person's actual damages").

Buck's argument focuses on paragraphs 1 and 3 of the award, which provide:

1. Respondent Thomas Joseph Buck is liable for and shall pay to Claimant the sum of **$770,269.00 in compensatory damages**.

 . . .

3. Respondent Thomas Joseph Buck is liable for and shall pay to Claimant the sum of **$2,310,806.00 in treble damages** pursuant to 18 U.S.C. 1964(c) – the Racketeer Influenced and Corrupt Organization Act, and the Indiana Corrupt Business Influence Act (Indiana Code Ann. § 35-45-6-2).

(Emphases Added). Buck points out that the $2,310,806 awarded in paragraph 3 is almost three times the $770,269 already awarded as compensatory damages in paragraph 1. Thus, according to Buck, the arbitrators impermissibly awarded Compton a total of four times compensatory damages, or "quadruple damages."

Buck, however, forfeited this argument by failing to include it in his motion to vacate. He first made this argument in an undeveloped footnote in his reply brief in support of his motion to vacate. Such belated and cursory presentation did not "properly raise the issue . . . with the district court." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008); *see also Fifth Third Mortg. Co. v. Chicago Title Ins. Co.*, 692 F.3d 507, 513 (6th Cir. 2012). The district court, apparently recognizing that this argument was forfeited, did not address the argument when it denied Buck's motion to vacate. And "[i]ssues not examined by the district court are ordinarily not considered on appeal." *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 830 F.3d 376, 383 (6th Cir. 2016).

Seeking our review of this issue, Buck argues that he properly raised it before the district court for either of two reasons: (1) Compton responded to Buck's new quadruple-damages argument in a sur-reply brief, and (2) Buck separately briefed the quadruple-damages issue in response to Compton's petition to confirm. As to Buck's first argument, he cites no authority suggesting that his forfeiture should be excused where the opposing party files a sur-reply and the district court still declines to address the forfeited argument. Indeed, Compton's sur-reply asserted that Buck forfeited this new argument by first raising it in his reply brief and that the district court need not address it. Filing an extra brief noting that an argument is forfeited does not somehow excuse that very forfeiture. As to Buck's second argument, the manifest-disregard standard is used "only to vacate arbitration awards." *Grain v. Trinity Health, Mercy Health Servs. Inc.*, 551 F.3d 374, 380 (6th Cir. 2008). Consequently, to preserve this issue as a ground for vacatur, Buck needed to present it in his motion to vacate—his response brief to Compton's motion to confirm does not suffice.

Buck next argues that, if he did forfeit the issue, we should exercise our discretion to consider it. We make such a choice based on four factors:

> 1) whether the issue newly raised on appeal is a question of law, or whether it requires or necessitates a determination of facts; 2) whether the proper resolution of the new issue is clear beyond doubt; 3) whether failure to take up the issue for the first time on appeal will result in a miscarriage of justice or a denial of substantial justice; and 4) the parties' right under our judicial system to have the issues in their suit considered by both a district judge and an appellate court.

*Scottsdale Ins.*, 513 F.3d at 552 (citation omitted). Buck points out that, in *Coffee Beanery, Ltd. v. WW, L.L.C.*, we found that these factors favored considering the forfeited issue of whether arbitrators manifestly disregarded a statute. 300 F. App'x 415, 420 (6th Cir. 2008). That case, however, is an unpublished decision that we need not follow. *See Keene Grp., Inc. v. City of Cincinnati*, 998 F.3d 306, 314 (6th Cir. 2021). And these factors guide a decision "within the ambit of our discretion," which we rarely exercise to entertain issues not properly raised before the district court. *Trs. of Operating Eng'rs Loc. 324 Pension Fund v. Bourdow Contracting, Inc.*, 919 F.3d 368, 376 (6th Cir. 2019) (citation omitted).

These factors do not favor review here. First, the question before us is not purely legal. Whether arbitrators manifestly disregarded the law concerns facts of if and how the arbitrators considered and allegedly refused to heed the treble damages statutes. To prove that the arbitrators consciously chose not to follow those statutes, Buck has only the parties' filings and the bare-bones language of the unexplained award. He lacks a transcript or an explained decision to support his assumptions about how the arbitrators calculated damages.

Second, the proper resolution of the issue is not clear beyond doubt. Buck assumes the arbitrators arrived at their treble damages amount by multiplying the compensatory damages by three (a calculation that is one dollar off), but it is at least "conceivable" that the arbitrators might have made their damages calculation another way. *Hale*, 2023 WL 2972572, at *4 (quoting *Jaros*,

70 F.3d at 421). For instance, they might have awarded treble damages on some of the $6.4 million offset Buck enjoyed because of Compton's settlement with Merrill Lynch ($5,500,000) and payment from the SEC Victim's Fund ($946,868).

Third, no miscarriage of justice would result. Buck could have asked for an explained decision that might have clarified how the arbitrators made their damages calculations, *see* FINRA Rule 12904(g), but he did not. He thus "has no one but himself to blame for our inability to assess his manifest-disregard argument." *Murray v. Citigroup Glob. Mkts., Inc.*, 511 F. App'x 453, 456 (6th Cir. 2013).

Fourth, the district court did not pass on this issue. And "[i]t is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120 (1976).

Accordingly, Buck forfeited this issue, and we decline to consider it.

5.

Buck asserts that the arbitrators manifestly disregarded the law in their award of interest. He complains that the arbitrators declined to award so-called "well-managed damages" (the difference between what the account made and what it reasonably could have made had it been properly managed) yet proceeded to award interest on those damages.

At the arbitration hearing, Compton presented evidence of market underperformance in support of her claim for well-managed damages. Although she requested both well-managed damages and pre-judgment interest on those damages, the arbitrators awarded only interest, not the well-managed damages themselves. The relevant paragraph of the award provides:

> 2. Respondent Thomas Joseph Buck is liable for and shall pay to Claimant **interest on the well-managed damages amount of $5,812,948.80**, which represents 80% of the overall loss value of the accounts requested by Claimant, at the rate of 8% per annum from March 25, 2018, through and

-14-

> including March 25, 2022.  **The total interest awarded is $1,860,144.00. Please note that the Panel is not awarding the well-managed damages amount of $5,812,948.80.  It is only basing its interest calculations on the amount of well-managed damages.**

(Emphases Added).

Buck asserts that "[i]t is Black Letter Law that interest cannot be assessed in the absence of a corresponding monetary judgment."  In support, he cites Indiana Code § 34-51-4-7, which provides that "[t]he court may award prejudgment interest as part of a judgment."  On its face, that statute merely permits an award of interest as part of a judgment, which is what the arbitrators did here.  It does not contain the prohibitive language Buck suggests.

As with his other arguments, Buck again cites only non-binding authorities.  Buck's closest authority on point for his interpretation of the Indiana pre-judgment interest statute is *Blinzinger v. Americana Healthcare Corp.*, 505 N.E.2d 449, 452 (Ind. Ct. App. 1987).  That case, however, is distinguishable.  There, the court rejected an award of interest that did not state a "fixed . . . amount for payment," and thus "could not be considered the equivalent of a money judgment."  *Id.* at 452.  Here, by contrast, the arbitrators "fixed an amount for payment"—$1,860,144.00.  Under *Blinzinger*'s reasoning, this amount could "be considered the equivalent of a money judgment" and could "function as an order which permitted an award of interest."  *See id. Blinzinger* thus is not clearly established legal authority supporting Buck's interpretation of Indiana's pre-judgment interest statute.

The only other Indiana case Buck cites for this argument affirms an award of pre-judgment interest and reinforces the discretionary nature of such decisions.  *Hupfer v. Miller*, 890 N.E.2d 7, 10 (Ind. Ct. App. 2008).  Other cases he cites—one from the Sixth Circuit and various cases from district courts in Illinois, Arkansas, and California—were not controlling on the arbitrators applying Indiana law.  In sum, none of Buck's cited authorities prevented the arbitrators from

awarding damages based on interest without awarding the amount on which that interest calculation was based.

Further, the lack of an explained decision sinks Buck's argument. Without evidence of the arbitrators' reasoning, it is at least "conceivable" that the arbitrators arrived at this interest decision in a way that awarded interest on a monetary amount to which Compton was already entitled through her claims against Buck and his employer. *Hale*, 2023 WL 2972572, at *4 (quoting *Jaros*, 70 F.3d at 421). For instance, the arbitrators might have based their interest award partially on Compton's damages paid by Merrill Lynch and the SEC. Because of the $6.4 million in payments from those other parties, Buck essentially got a free ride by not having to pay all of Compton's compensatory damages. The arbitrators might have realized that Compton had been deprived of the use of that money for several years and could have reasonably required Buck to pay interest on $5,812,958.80 of that amount to fully compensate Compton.

III.

Having disposed of Buck's manifest-disregard arguments, we turn next to Compton's motion for sanctions.

There are two avenues by which we can impose sanctions. The first is under 28 U.S.C. § 1927, which provides that, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." This standard is an objective one—it applies "when an attorney knows or reasonably should know that a claim pursued is frivolous." *Tareco Prop., Inc. v. Morriss,* 321 F.3d 545, 550 (6th Cir. 2003) (citation omitted). In other words, § 1927 sanctions "may be imposed without a finding that the lawyer subjectively

knew that his conduct was inappropriate." *Scherer v. JP Morgan Chase & Co.*, 508 F. App'x 429, 439 (6th Cir. 2012).

The second is under Federal Rule of Appellate Procedure 38, which allows us to "award just damages and single or double costs to the appellee" where the court "determines that an appeal is frivolous" and "after a separately filed motion or notice from the court and reasonable opportunity to respond." Fed. R. App. P. 38. The Rule 38 standard has both objective and subjective components: "An appeal is frivolous if it is obviously without merit *and* is prosecuted for delay, harassment, or other improper purposes." *Waldman v. Stone*, 854 F.3d 853, 854 (6th Cir. 2017) (order) (emphasis added).

Here, Compton argues that sanctions are appropriate because Buck's arguments for vacatur were "objectively meritless and had no reasonable basis for success." According to Compton, Buck's counsel "unreasonably and vexatiously multipl[ied] these proceedings by pursuing a frivolous appeal," rather than accepting the arbitrators' properly rendered decision. Compton's motion for sanctions echoes her request that we jettison the manifest-disregard standard altogether. As Compton's counsel asserted at oral argument, an appeal for manifest disregard amounts to nothing but "a litigation tactic" and "a frivolous attempt to grind down" the party that prevailed in arbitration.

But having a steep hill to climb on appeal does not make an appeal frivolous. Indeed, we have rejected motions for sanctions stemming from the "limited scope of judicial review of arbitration decisions." *Vic Wertz Distrib. Co. v. Teamsters Loc. 1038*, 898 F.2d 1136, 1144 (6th Cir. 1990) (denying motion for sanctions); *Dawahare*, 210 F.3d at 671 (same); *Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 308–09 (6th Cir. 2008) (same). And "[w]e do not wish to chill any appeal . . . which involves serious, controversial, doubtful, or even novel questions." *Wilton Corp.*

*v. Ashland Castings Corp.*, 188 F.3d 670, 677 (6th Cir. 1999). Here, Buck's appeal presented several unresolved questions including how clear a statute must be before it is a "clearly established legal principle" that binds arbitrators to a particular application and whether an unexplained arbitration award that nevertheless cites to statutes is reasoned enough to permit a finding of manifest disregard. Further, much of the parties' briefing addressed the important and unresolved questions of whether the manifest-disregard standard remains viable and in what form.

Accordingly, Buck's appeal was not frivolous, and the motion for sanctions is denied.

IV.

Finally, on cross-appeal, Compton argues that we should remand for the district court to address her two requests for interest on her award. The district court was silent on Compton's requests for (1) pre-judgment interest running from the date of the award's issuance through its confirmation, and (2) post-judgment interest running from the date of confirmation through the time when the judgment is satisfied.

In diversity cases, such as this one, "state law governs awards of prejudgment interest." *F.D.I.C. v. First Heights Bank, FSB*, 229 F.3d 528, 542 (6th Cir. 2000). Here—regardless of whether the applicable pre-judgment interest statute is Tennessee's, Tenn. Code § 47-14-123, or Indiana's, Ind. Code § 34-51-4-7—the award of pre-judgment interest is within the trial court's discretion. *See, e.g.*, *Foster-Henderson v. Memphis Health Ctr., Inc.*, 479 S.W.3d 214, 226 (Tenn. Ct. App. 2015) (Under Tennessee law, "[a]n award of prejudgment interest is within the sound discretion of the trial court."); *Wormgoor v. State Farm Mut. Auto. Ins. Co.*, 203 N.E.3d 1092, 1095 (Ind. Ct. App. 2023) ("An award of prejudgment interest under [Indiana's pre-judgment interest statute] is discretionary."). When a district court, "without explanation, decline[s] to impose prejudgment interest," we can remand "with instructions to support an award or denial of

prejudgment interest with findings of fact incorporating its reasons for its decision." *Drennan v. Gen. Motors Corp.*, 977 F.2d 246, 253 (6th Cir. 1992); *see also Bricklayers' Pension Tr. Fund v. Taiariol*, 671 F.2d 988, 990 (6th Cir. 1982) (remanding "for a determination of whether the facts of this case warrant an award of prejudgment interest").

As for post-judgment interest, federal law controls, and post-judgment interest is mandatory under 28 U.S.C. § 1961(a). We similarly can remand for entry of an award of post-judgment interest. *See, e.g.*, *Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 590 (6th Cir. 2002).

Thus, we remand both interest requests here.

V.

For the reasons stated, we affirm the denial of Buck's motion to vacate and the grant of Compton's motion to confirm, deny the motion for sanctions, and remand for consideration of Compton's requests for pre- and post-judgment interest.